# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE REFUGIO DAVALOS,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:25-cv-00646-SAB<br><br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 12, 15) |

Plaintiff Jose Refugio Davalos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in his analysis of a certain medical opinions.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

/ / /

/ / /

/ / /

# I.

# BACKGROUND

## A.    Procedural History

On April 18, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on June 23, 2020.  (ECF No. 9, Administrative Record ("AR"), 22.)  Plaintiff's application was initially denied on September 7, 2022, and denied upon reconsideration on December 6, 2022.  (Id.)  Plaintiff requested a hearing before an ALJ.  On May 6, 2024, Plaintiff, represented by counsel, appeared telephonically for a hearing before an ALJ.  (Id.)  Plaintiff, assisted by a Spanish translator, and vocational expert ("VE") Julie Bose testified.  (Id.)  On May 30, 2024, the ALJ issued a decision concluding that Plaintiff was not under a disability.  (AR 35.)  On March 25, 2025, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)

## B.    The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act only through December 31, 2026, and that Plaintiff had not engaged in substantial gainful activity since June 23, 2020, the alleged onset date.  (AR 24.)  The ALJ then found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status post lumbar fusion, and asthma.  (AR 25.)  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 26.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except Plaintiff was limited to jobs that did not require the use of ropes, ladders, or scaffolds.  Plaintiff could occasionally climb ramps and stairs, balance, crouch, stoop, kneel, and crawl.  Plaintiff could have no concentrated exposure to fumes, odors, dusts, gases, poor ventilation, or other pulmonary irritants and no concentrated exposure to hazards such as unprotected heights or moving mechanical parts.  (AR 27.)

The ALJ then found that Plaintiff was unable to perform any past relevant work, he was

39 years old on the alleged disability onset date, and he had a marginal education. (AR 33.) The ALJ discussed that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that the claimant was "not disabled," whether or not Plaintiff had transferable job skills. (AR 34.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, from June 23, 2020, through the date of the decision, May 30, 2024. (AR 35.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 5, 6, 7.) Thereafter, the parties filed their briefs on the matter.[1] (ECF Nos. 12, 15.)

## II.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v.

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations

Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d

which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

### B. Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability

determination.'"  Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020).  The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to properly analyze the medical opinions of William Foxley, M.D., and Alberto Ruvalcaba, M.D.  (ECF No. 12, pp. 8-15.)  The Commissioner opposes, arguing the ALJ's opinion is supported by substantial evidence.  (ECF No. 16.)  The Court agrees with the Commissioner.

When an ALJ calculates a claimant's RFC, the ALJ is tasked with determining "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original).  In other words, the "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the *most*."  Id. (emphasis in original).  An ALJ assesses an RFC "based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  This includes "any statements . . . provided by medical sources, whether or not they are based on formal

medical examinations," as well as reviewing any "consultative examination(s)" and, where applicable, prior administrative medical findings ("PAMFs").  Id.

Under the Social Security Administration's 2017 revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa."  Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022), quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844, 2017 WL 168819 (F.R. Jan. 18, 2017).  "The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency."  Id., quoting 20 C.F.R. § 404.1520c(a).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence."  20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1).  Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).  With that said, it remains for "the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020), quoting Treichler, 775 F.3d at 1098.

"The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion."  Woods, 32 F.4th at 792, citing 20 C.F.R. § 404.1520c(c)(3).  Therefore, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records."  Id., citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v).  That said, "the ALJ no longer needs to make specific findings regarding these relationship factors."  Id.

The ALJ summarized the medical opinion of William Foxley, M.D., as follows:

> William Foxley, M.D., stated in September 2022 that the claimant can sit or stand for fifteen minutes at a time and less than two hours a day, can walk one block at a time, and must walk for fifteen minutes every twenty minutes.  Dr. Foxley added that the claimant can rarely lift and carry ten pounds, twist, stoop, crouch,

and climb stairs and never climb ladders.  Dr. Foxley further stated that the claimant can handle, finger, and reach forward 25% of the day and never reach overhead; could perform low stress work; would be off task at least 25% of the day; and would need frequent thirty-minute breaks (Exhibit 5F). In a separate statement, Dr. Foxley indicated that the claimant has no specific mental limitations but would miss and/or be unable to complete a workday at least five days a month (Exhibit 14F).

(AR 31.)

For supportability, the ALJ discussed that:

Dr. Foxley cited to a diagnosis of lumbar degenerative disc disease but described normal sensation, normal strength, and negative straight leg raises, failing to support the numerous limitations he described (Exhibit 5F/ 1).  Moreover, Dr. Foxley did not identify an impairment affecting the upper extremities to support limitations in reaching or manipulation (Exhibit 5F/ 1). Dr. Foxley's May 2021 examination showed a normal range of motion and independent gait, further failing to support this opinion (Exhibit 6F/ 571).

(Id.)

Regarding consistency, the ALJ noted that:

The claimant had additionally displayed a minimally antalgic gait with 5-/5 or greater strength in May 2021, inconsistent with limitation to standing for two hours a day and rare ability to lift and carry ten pounds (Exhibit 6F/ 474).  Moreover, although physical therapy records from December 2020 describe a stiff gait with some cramping, the claimant's strength was 4/5 or better in all muscle groups and the claimant could bend to reach the mid-shin, inconsistent with the limitations to rare lifting, stooping, and crouching (Exhibit 6F/ 54).

(AR 31-32.)

Based on the foregoing, the ALJ found Dr. Foxley's opinion to be "unpersuasive."  (AR 32.)

For Alberto Ruvalcaba, M.D., the ALJ summarized the medical opinion as follows:

Dr. Ruvalcaba, a primary care provider, opined in October 2023 that the claimant can walk for two blocks and sit or stand for thirty minutes at a time and two hours a day with an option to walk for fifteen minutes every thirty minutes.  Dr. Ruvalcaba added that the claimant must take two thirty-minute breaks a day; can rarely lift and carry ten pounds and occasionally lift and carry less than ten pounds; and can never twist, stoop, crouch, or climb.  Dr. Ruvalcaba further indicated that the claimant could not tolerate low stress work due to pain, would be off tasks at least 25% of the time, and would miss about four days of work a month (Exhibit

17F).  Dr. Ruvalcaba gave a second opinion in February 2024 that the claimant can sit for ten minutes at a time and less than two hours at a time, can stand for fifteen minutes at a time and less than two hours a day; must walk for fifteen minutes every fifteen minutes, requires an assistive device, and must take thirty-minute breaks every hour.  Dr. Ruvalcaba stated that the claimant can rarely lift and carry less than ten pounds and can never stoop, twist, crouch, or climb.  He added that the claimant could not tolerate low stress work due to pain, would be off tasks at least 25% of the time, and would miss more than four days of work a month (Exhibit 21F).

(Id.)

Regarding supportability, the ALJ discussed that:

Dr. Ruvalcaba's treatment notes do identify lumbar degenerative disc disease, but do not include evaluations of strength, gait, or spinal range of motion to support this opinion (Exhibit 20F/ 10-21).    Where  Dr.  Ruvalcaba  did  include  references  to musculoskeletal functioning, he noted no tenderness and diffusely full range of motion, which fail to support this opinion (Exhibit 20F/ 21, 25).

(Id.)

For consistency, the ALJ found that:

Imaging obtained in March 2024 indicated stable mild spondylosis and foraminal encroachment inconsistent with the inability to lift ten pounds or stoop (Exhibit 23F).  Evaluation in September 2021 also indicated intact strength aside from in the toe of the right foot and no apparent pain behaviors, inconsistent with the descriptions of constant distracting pain or inability to lift or walk that Dr. Ruvalcaba described (Exhibit 6F/ 524).

In light of this analysis, the ALJ found Dr. Ruvalcaba's opinion to be "unpersuasive."  (Id.)

From the outset, the Court finds that the ALJ adequately identified and discussed Dr. Foxley's and Dr. Ruvalcaba's opinions, addressing supportability and consistency before coming to a conclusion regarding persuasiveness.  The Court further finds that the ALJ's citations to the record support his decision (discussed further below).

Nonetheless, Plaintiff makes two arguments.  First, Plaintiff argues that the ALJ did not correctly employ the supportability and consistency framework, contending that "[a]ny conflation of these factors, without separate analyses for each factor, renders the ALJ's analysis insufficient under the regulations."  (ECF No. 12, p. 12.)  Second, Plaintiff argues that the ALJ cherry-picked evidence in the record to offset the supportability analysis.  (Id. at pp. 11-15.)  The Court is not

persuaded.

This Court has previously rejected Plaintiff's argument regarding *any* conflation of supportability and consistency. In <u>Ayers v. Commissioner</u>, the plaintiff raised the same argument, that any conflation of supportability and consistency rendered an ALJ's opinion insufficient. No. 1:25-cv-00516-SAB, 2026 WL 787926, *7 (E.D. Cal. Mar. 20, 2026). The Court acknowledged that in <u>Ayers</u> the plaintiff had "found district court cases where courts found that an ALJ's opinion was to a level of imprecision as to render the opinion to be not supported by substantial evidence." <u>Id.</u> However, the Court noted that "none of the courts took Plaintiff's hardline position or otherwise attempted to announce a rule." <u>Id.</u> Furthermore, the Court observed that recent Ninth Circuit authority, <u>Woods</u>, undermined the plaintiff's position. <u>Id.</u> Specifically, "[i]n <u>Woods</u>, the Ninth Circuit observed in a footnote that the ALJ had flipped the use of the term consistency with supportability." <u>Id.</u>, quoting 32 F.4th at 793 n.4. "The [Ninth Circuit] did not immediately find that that the ALJ's analysis was 'insufficient'; rather, the Court construed what the ALJ meant in context and gave an admonition: 'Although the ALJ's meaning here is clear from context, to avoid confusion in future cases, ALJs should endeavor to use these two terms of art—"consistent" and "supported"—with precision.'" <u>Id.</u>, citing 32 F.4th at 793 n.4. With that, the Court rejected the plaintiff's argument that any conflation of these factors requires remand as unpersuasive. Here, too, the Court finds this argument to be unpersuasive.

Moreover, as discussed above, while the ALJ did not necessarily expressly use the terms "supportability" and "consistency," the ALJ's meaning was clear from the discussion. Regarding both medical opinions, the ALJ discussed how the opinions themselves, or other medical evidence from Drs. Foxley and Ruvalcaba, were internally not supported. The ALJ then identified other evidence in the record that demonstrated that the medial opinions were not consistent with the record overall. Thus, the Court finds that the ALJ did not conflate supportability with consistency.

Turning to Plaintiff's second argument, the Court takes the time to elucidate what this argument is really getting at. Over the past few years, it appears that "cherry-picking" has become somewhat of a shorthand term in Social Security cases, but the parameters and undergirding appear to have been seemingly lost to time. Therefore, the Court will discuss the origin and history of the

use of the term "cherry-picking."

The term "cherry-pick" appears to have first been introduced into the Ninth Circuit in a footnote in Garrison v. Colvin, 759 F.3d 995, 1017 n.23 (9th Cir. 2014).  In Garrison, the Ninth Circuit reaffirmed that when "discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."  Id. at 1017.  "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  Id.  In a footnote, the Ninth Circuit favorably cited to Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011), where the Seventh Circuit discussed that an ALJ was not permitted to "cherry-pick" from mixed results of mental health treatment for bipolar disorder to support a denial of benefits.

In Attmore v. Colvin, another case involving mental health issues, the Ninth Circuit again cited to Scott, this time above the line, following a citation to Garrison for the proposition that "[a]n ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret 'reports of "improvement" . . . with an understanding of the patient's overall well-being and the nature of her symptoms.'"  827 F.3d 872, 877 (9th Cir. 2016).

In Diedrich v. Berryhill, again a case involving mental health issues, the Ninth Circuit made the jump from relying on Garrison to stating in the first instance that "[i]t was improper for the ALJ to discount [the plaintiff's] testimony by 'cherry pick[ing]' the absence of certain symptoms from this report."  874 F.3d 634, 642 (9th Cir. 2017)  In so doing, the Ninth Circuit cited to Attmore, which the Court stated had quoted Scott.  Though technically true, Attmore cited to Scott and gave an explanatory parenthetical, arguably dicta, that included the "cherry-picked" language.

The only other published opinion from the Ninth Circuit in this area of the law, with this term, is Ghanim v. Colvin, a case involving mental health issues, where the Ninth Circuit found that the ALJ had impermissibly "cherry-picked" certain aspects of a medical opinion regarding the plaintiff's "rapport and demeanor instead of considering these factors in the context of Dr. Dees's

diagnoses and observations of impairment."  763 F.3d 1154, 1164 (9th Cir. 2014).

A few observations.  First, as should be apparent, the use of the term "cherry-picking" has only been employed by the Ninth Circuit in cases involving mental health issues, where symptoms inevitably ebb and flow.  Second, though an appealing verb, the term "cherry-picking" seems to have obfuscated the original issue the Ninth Circuit was aiming at discussing and giving guidance to—namely, how to evaluate examples used by an ALJ that relate to mental health issues.

Indeed, going back to Garrison, the Ninth Circuit gave guidance on its original intention. In evaluating how an ALJ discusses examples of mental health evidence, the examples an ALJ chooses "must in fact constitute examples of a broader development."  759 F.3d at 1018.  In Attmore, the Ninth Circuit discussed two examples in which an ALJ may fail to consider examples in a broader development.  "First, the improvement the ALJ highlighted was only temporary."  827 F.3d at 878.  "Second, although the ALJ observed some 'improvement in the area of social functioning,' that improvement was quite limited."  Id.  Indeed, Deidrich reaffirmed the "broader development" analysis, 874 F.3d at 642, and Ghanim essentially applied the same.  763 F.3d at 1164.

The last observation the Court makes is that following the Social Security Administration's 2017 revised regulations, it appears that, in the context of the evaluation of medical opinions, the "broader development" analysis is really a subset of an argument regarding supportability and consistency.  Recall, "supportability" means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence," 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1); "consistency" means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).  Thus, when a plaintiff makes a broader development/cherry-picking argument as to a medical opinion, the Court concludes that the plaintiff is asking the Court to evaluate the examples cited by the ALJ and look to whether those examples constitute examples of a broader development.

In light of this understanding, the Court declines Plaintiff's invitation that the Court must evaluate "whether the ALJ appropriately review[ed] the record as a whole" in evaluating each

medical opinion (ECF No. 12, p. 13.)  To start with, an ALJ is already required to review and consider the entire record.  20 C.F.R. §§ 404.920b, 404.1520b ("After we review all of the evidence relevant to your claim, we make findings about what the evidence shows.").  Further, to require the ALJ to *discuss* the entire medical record as to *each* medical opinion is not grounded in the regulations and, on a practical note, would be almost certainly unfeasible to implement in every case.  That said, the Court disagrees with the Commissioner that by Plaintiff invoking cherry-picking, he means only a reweighing of evidence argument.

With that, the Court will now evaluate the examples given by the ALJ and evaluate whether they constitute examples of a broader development.[4]  As to Dr. Foxley, the Court observes that much of the ALJ's analysis was with regard to the supportability of the medical opinion in and of itself.  The ALJ then gave two examples of other medical records.  First, a May 20, 2021 examination by David Kunz, PA, where the ALJ observed that Kunz noted that Plaintiff had a minimally antalgic gait with 5-/5 or greater strength.  (AR 31, citing AR 994.)  Second, a December 3, 2020 physical therapy progress note, where the ALJ observed that Ann Miller, MPT, noted that Plaintiff had had a stiff gait with some cramping, Plaintiff's strength was 4/5 or better in all muscle groups and that Plaintiff could reach the mid-shin.  (AR 31-32, citing AR 491.)  Significantly, the ALJ limited the import of these examples.  As for Kunz, the ALJ noted that this record was inconsistent with Dr. Foxley's limitation of standing for two hours a day and rare ability to lift and carry ten pounds.  As for Miller, the ALJ observed that the physical therapy progress note was inconsistent with Dr. Foxley's limitation to rare lifting, stopping, and crouching.  These two examples, separated by over a year, show at the very least a consistency of symptoms, addressing broader development.  Furthermore, the ALJ did not use these examples to negate Plaintiff's physical impairment symptoms overall, but the ALJ was explicit as to how these examples undercut Dr. Foxley's medical opinion.  Accordingly, the ALJ did not err as to the examples used to negate Dr. Foxley's opinion.

Turning to Dr. Ruvalcaba's opinion, again, the ALJ has provided two examples.  First, a

---

[4] For this case, the Court assumes without deciding that broader development/cherry-picking arguments may be raised in the area of physical impairments.

March 1, 2024 MRI of the lumbar spine without contrast, which indicated stable mild spondylosis and mild foraminal encroachment.  (AR 32, citing AR 2298.)  Second, a May 20, 2021, examination by David Kunz, PA,[5] where the ALJ observed that Plaintiff had intact strength aside from the right foot and not apparent pain behaviors.  (AR 32, citing AR 944-45.)  Again, the ALJ limited the import of these examples.  For the MRI, the ALJ observed that the findings were inconsistent with Dr. Ruvalcaba's opinion that Plaintiff could not lift ten pounds or stoop.  As to Kunz, the ALJ noted that the findings were inconsistent with the descriptions of constant distracting pain or inability to walk from Dr. Ruvalcaba's opinion.  These two examples, separated by years, demonstrate at the very least a consistency of symptoms, addressing broader development.  And once more, the ALJ did not use these examples to negate Plaintiff's physical impairment symptoms overall, but the ALJ was clear as to how these examples undermined Dr. Ruvalcaba's medical opinion.  Therefore, the ALJ did not err as to the examples used to negate Dr. Ruvalcaba's opinion.

The Court otherwise agrees with the Commissioner that Plaintiff's remaining argument essentially seeks a reweighing of the evidence (ECF No. 12, pp. 14-15; ECF No. 15, pp. 7-8), which is not the function of judicial review.  Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ.").[6]

In sum, the ALJ did not err in his analysis of the medical opinions of Dr. Foxley and Dr. Ruvalcaba.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[5] The Court notes that the ALJ was not precise in referencing this example.  The ALJ stated that he was citing to a September 2021 record, but Exhibit 6F/524 directs the Court to the May 2021 examination by Kunz.  The Court has reviewed the May 2021 record by Kunz and finds that it nonetheless supports the ALJ's findings.

[6] Plaintiff could have raised the records he cites with other arguments.

**IV.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jose Refugio Davalos. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **April 16, 2026**

STANLEY A. BOONE
United States Magistrate Judge

15